STATE v. HOWELL

[169 N.C. App. 58 (2005)]

―――――――

STATE OF NORTH CAROLINA v. ROGER DALE HOWELL, DEFENDANT

No. COA03-1491

(Filed 15 March 2005)

**1. Sexual Offenses— third-degree sexual exploitation of minor—motion to dismiss—multiplicity of convictions**

The trial court did not err in a multiple third-degree sexual exploitation of a minor case by denying defendant's motion to dismiss some or all of the charges on grounds of double jeopardy and by denying his motion to arrest judgment on all but one count arising from 43 child pornography images on defendant's computer hard drive, because: (1) the plain language of N.C.G.S. § 14-190.17A(a) supports multiple convictions, and the intent of the child pornography statutes is to prevent the victimization of individual children and to protect minors from physiological and psychological injuries resulting from sexual exploitation and abuse; and (2) even if there were only five downloads, the State's evidence tended to show that each of the two hundred individual photographs on defendant's computer, found within the five zip directories, had been opened, and saved on defendant's hard drive.

**2. Constitutional Law— overbreadth—child pornography statutes—case-by-case analysis of fact situations**

N.C.G.S. §§ 14-190.17A(a) and 14-190.13 which protect against child pornography are not overbroad even though they extend to images of minors which do not require a live minor for their production and even though defendant contends they allegedly criminalize material that does not violate community standards, because: (1) both the Court of Appeals and our Supreme Court have addressed this very issue and concluded that the statutes are constitutional; and (2) whatever overbreadth may exist should be cured on a case-by-case analysis of fact situations to which their sanctions assertedly may not be applied.

**3. Sentencing— consecutive probationary sentences—sexual exploitation of minor**

The trial court did not err in a multiple third-degree sexual exploitation of a minor case by allegedly imposing consecutive probationary sentences in violation of N.C.G.S. § 15A-1346, because: (1) defendant did not receive consecutive probationary sentences; (2) the judgment indicated that defendant was subject to six consecutive suspended sentences and a total of five years of probation, that defendant would serve six consecutive sentences if defendant's probation is revoked, and the trial court in its discretion may sentence a defendant this way; and (3) the trial court imposed 60 months of supervised probation only after making a finding that a longer period was necessary than that prescribed in N.C.G.S. § 15A-1343.2(d).

Appeal by defendant from judgments entered 3 January 2003 by Judge Timothy L. Patti in Gaston County Superior Court. Heard in the Court of Appeals 1 September 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Leslie C. Rawls, for defendant-appellant.*

HUDSON, Judge.

On 7 August 2000, Defendant Roger Dale Howell was indicted by a Gaston County Grand Jury on multiple counts of second-degree sexual exploitation of a minor. On 25 November 2002, a jury convicted defendant of 43 counts of third-degree sexual exploitation of a minor. Upon his convictions, Judge Patti sentenced defendant to six

consecutive terms of imprisonment of six to eight years. These sentences were suspended and defendant was placed on supervised probation for 60 months. Defendant appeals his convictions and sentence, and for the reasons set forth below, we find no error.

## BACKGROUND

The evidence tends to show that in February or March 2000, defendant began communicating over the Internet with Jamie Renee Hammonds via instant messages. Although both lived in Gastonia, North Carolina, defendant and Ms. Hammonds were not acquainted. Ms. Hammonds testified that on 24 May 2000, she began posing online as "Sissy," Ms. Hammonds' fifteen-year-old babysitter. Initially, she posed as the babysitter to get defendant to leave her alone, but after conversing with defendant as "Sissy," Ms. Hammonds became suspicious of defendant's interest in the purported fifteen-year-old. Hammonds sent defendant a picture of her actual babysitter and testified that defendant later asked "Sissy" to make a "very sexy picture that on a scale of 1 to 10 would be a 10." Hammonds testified that the two discussed meeting somewhere and that defendant again asked "Sissy" to send a "sexy" picture of herself. Hammonds continued communicating with defendant and contacted law enforcement authorities including Crimestoppers, the Missing and Exploited Children's hotline, and Detective Hawkins of the Gastonia Police Department.

After further online conversations between Hammonds and defendant, Detective Hawkins went to Hammonds' house and viewed transcripts of her conversations with defendant, as well as photographs defendant had sent her. The police then set up an undercover meeting between "Sissy" and defendant. A female officer went to Hammonds' house, where posing as "Sissy," she chatted with defendant online, spoke with him on the telephone, and set up a meeting. Defendant met the undercover officer at a local park, believing she was "Sissy," and asked her about the pictures she was supposed to bring to him. Officers arrested him in the park.

Police officers executed a search warrant at defendant's home and seized a computer, which was turned over to SBI Agent Mike Smith, an expert in computers and computer evidence of crimes against children. On the hard drive of the seized computer, Agent Smith found over 200 pictures depicting minors engaged in sexual acts. These images were received in five zip files, and then stored on the computer's hard drive in five separate directories.

**STATE v. HOWELL**

[169 N.C. App. 58 (2005)]

ANALYSIS

I.

[1] Defendant argues that the trial court erred when it denied his motion to dismiss some or all of the charges on grounds of double jeopardy and when it denied his motion to arrest judgment on all but one count. In these assignments of error, defendant contends that the charges against him were multiplicitous. Defendant asserts that the possession of photos on a single hard drive constitutes only one offense or, in the alternative, no more than five separate counts, one for each downloaded zip file. We disagree.

Defendant argues that the applicable statutory definitions do not support the multiple charges against him. Defendant was convicted of violating N.C.G.S. § 14-190.17A(a) (2000), which provides in pertinent part:

> A person commits the offense of third degree sexual exploitation of a minor if, knowing the character or content of the material, he possesses material that contains a visual representation of a minor engaging in sexual activity.

*Id.* N.C.G.S. § 14-190.13 (2000) defines "material" as: "Pictures, drawings, video recordings, films or other visual depictions or representations but not material consisting entirely of written words." *Id.* Defendant suggests that because the definition of "material" specifies items in the plural, the photographs found on his computer constitute only a single charge.

In support of this argument, defendant cites a Delaware case where the court held that multiple charges against a defendant who possessed multiple child pornography photographs were not multiplicitous because the applicable statute referred to a singular "visual depiction." *Fink v. State*, 817 A.2d 781 (Del. 2003). Although not controlling, we read *Fink* as undermining rather than supporting defendant's argument. Defendant focuses solely on the plural form in the definition of material, in N.C.G.S. § 14-190.13, while ignoring the plain language of the statute under which he was convicted, N.C.G.S. § 14-190.17A(a). The latter section makes possession of material containing "*a* visual representation," a violation of the law. N.C.G.S. § 14-190.17A(a) (emphasis added). *Fink* supports conviction on multiple counts where the statute proscribes possession of a singular visual depiction or representation, as it does here.

Furthermore, we conclude that the listing of plural items in the definition of "material" is merely a matter of style.

Although North Carolina Courts have not previously addressed multiplicitous charges under these statutes, many jurisdictions have done so in similar cases. The Supreme Courts of Utah and South Dakota have held that their respective statutes, which, like North Carolina's, define "material" in the plural, support multiple convictions for possession of child pornography downloaded to a defendant's computer. *State v. Morrison*, 31 P.3d 547 (Utah 2001); *State v. Martin*, 674 N.W.2d 291 (S.D. 2003). In addressing the issue of multiplicity, many courts have focused on whether the relevant statutes refer to "a" or "any" visual representation. While some jurisdictions conclude that the use of "any" is ambiguous and cannot support multiple charges for possession of multiple photographs on a computer hard drive or floppy disk, most construe "any" to support multiple convictions for possession of multiple images. *See, e.g., U.S. v. Kimbrough*, 69 F.3d 723 (5th Cir. 19950; *State v. Parrella*, 736 So. 2d 94 (Fla. App. 1999); *American Film Distributors, Inc. v. State*, 471 N.E.2d 3 (Ind. App. 1984) (all holding that "any" is ambiguous). *But see Martin*, 674 N.W.2d 291; *State v. Mather*, 646 N.W.2d 605, 616 (Neb. 2002); *Morrison*, 31 P.3d 547; *State v. Multaler*, 643 N.W.2d 437 (Wis. 2002); *U.S. v. Esch*, 832 F.2d 531 (10th Cir. 1987) (all holding that "any" supports multiple convictions). We have found no jurisdictions, however, which have held the use of the singular "a", as appears in our statute, to be ambiguous. Indeed, an Alabama court stated:

How, then, should the unit of prosecution be described so that an intent to allow multiple convictions is clear and unequivocal? Instead of using the word "any" to describe the unit of prosecution, the singular word[] "a" . . . should be used.

*McKinney v. State*, 511 So.2d 220, 224 (Ala. 1987). Similarly, we conclude that the plain language of N.C.G.S. § 14-190.17A(a) supports multiple convictions here.

Defendant also cites North Carolina cases in support of his argument. *See State v. Smith*, 323 N.C. 439, 373 S.E.2d 435 (1988); *State v. Petty*, 132 N.C. App. 453, 512 S.E.2d 428 (1999). Neither of these cases, however, involves violations of the child pornography statutes. *Id.* In *Petty*, the Court addressed whether a first-degree sexual offense is a single wrong for jury unanimity purposes and thus is inapposite. 132 N.C. App. at 460-61, 512 S.E.2d at 433. In its short

discussion of multiplicity, the *Petty* Court noted that to avoid multi-plicity in an indictment, "a criminal pleading must contain . . . [a] separate count addressed to each offense charged." *Id.* at 463, 512 S.E.2d at 435 (internal citations omitted). Defendant makes no argument regarding the number of indictments.

In *Smith*, the Court held that a single sale of multiple pornographic magazines could not yield multiple convictions. 323 N.C. at 444, 373 S.E.2d at 438. However, *Smith* is also easily distinguished from this case, as it involved the defendant's conviction under N.C.G.S. § 14-190.1(a), for intentionally disseminating obscenity. *Id.* The statute involved here, N.C.G.S. § 14-190.17A(a), differs from the one in *Smith* in two important ways. First, although enacted at the same time and under the same bill as N.C.G.S. § 14-190.17A(a), the statute in *Smith* makes it illegal to sell "*any* obscene writing, picture or other representation or embodiment of the obscene." N.C.G.S. § 14-190.1(a)(1) (emphasis added). The Court reasoned that this language, using "any" rather than "a," failed to indicate a "clear expression of legislative intent to punish separately and cumulatively for *each and every* obscene item." *Smith* at 437, 373 S.E.2d at 441-42. By contrast, in N.C.G.S. § 14-190.17A(a), the legislature chose to use the term "a" visual depiction, thus indicating a different intent.

Both N.C.G.S. §§ 14-190.1(a) and 14-190.17A(a) were enacted under a bill entitled, "An act to strengthen the obscenity laws of this State and the enforcement of these laws . . . and *to stop the sexual exploitation . . . of minors*" (emphasis added). *See Cinema I Video, Inc. v. Thornburg*, 83 N.C. App. 544, 549, 351 S.E.2d 305, 309 (1986), aff'd 320 N.C. 485, 358 S.E.2d 383 (1987). But, in the two statutes, the legislature addressed two distinct societal problems. Obscenity laws, such as N.C.G.S. § 14-190.1(a), address the public or community morality and serve to "protect[] . . . society as a willing or unwilling audience from the corrupting effects of obscenity." *Id.* at 551-52, 351 S.E.2d at 311. Child pornography laws, such as N.C.G.S. § 14-190.17A(a), on the other hand, are designed to prevent the victimization of individual children, and to protect "minors from the physiological and psychological injuries resulting from sexual exploitation and abuse." *Id.* This Court has noted that child pornography poses a particular threat to the child victim because "the child's actions are reduced to a recording [and] the pornography may haunt him in future years, long after the original misdeed took place." *Id.* at 568-69, 351 S.E.2d at 320 (citing *New York v. Ferber*, 458 U.S. 747, 759, 73 L.Ed. 2d 1113, 1124 (1982)). Intending to protect individual minors

from harm, the General Assembly wrote N.C.G.S. § 14-190.17A(a) to support a charge for each image. In *Smith*, the statute was directed at the community morality concerns of obscenity, not to the victimization of individual children. We conclude, therefore, that the legislature intended by § 14-190.17A(a) that a defendant could be charged and convicted on multiple counts for the 43 child pornography images on his computer hard drive.

Without abandoning his argument that he should only have been convicted on one count of possession of child pornography, defendant argues alternatively that the evidence supports, at most, five counts, as there were five downloads of one zip file each. Although the State's evidence regarding the downloads is somewhat confusing, it did show five zip files on defendant's hard drive, each containing multiple compressed files with child pornography images. The State's witness, Agent Smith, testified that it appeared that defendant downloaded these files from the Internet. Defendant argues that each of the five downloaded zip files is the technological equivalent of a digital magazine. Accordingly, defendant asserts that as in *Smith*, where a magazine supported only one charge, we should treat each zip file as only one item, rather than allowing separate charges for each photo. We decline to do so.

As discussed, *Smith* does not apply here, as the intent of obscenity statutes is different from that of child pornography statutes. Furthermore, even if there were only five "downloads," the State's evidence tended to show that each of the two hundred individual photographs on defendant's computer, found within the five zip directories, had been opened on defendant's computer. As each of the images had been opened, and saved on defendant's hard drive (regardless of what "directory" they were in), we hold that the evidence supports the conclusion that defendant "possessed" each of these 43 images, per N.C.G.S. § 14-190.17A(a).

Thus, we conclude that defendant's multiple convictions are consistent with the language and intent of the child pornography statutes and do not violate his right to be free from double jeopardy.

II.

[2] Defendant also argues that the statutes under which he was convicted are unconstitutionally overbroad, in violation of the First Amendment of the United States and North Carolina Constitutions.

Defendant asserts that the statutes which resulted in his conviction are unconstitutional both facially and as applied to him. However, both this Court, and our Supreme Court have previously addressed this very issue and concluded that the statutes are constitutional. *Cinema I Video, Inc. v. Thornburg*, 83 N.C. App. 544, 352 S.E.2d 305 (1986), aff'd 320 N.C. 485, 358 S.E.2d 383 (1987). Defendant has failed to cite to this controlling precedent or to distinguish his case. As explained below, we are bound to follow the sound rulings of the *Cinema I* cases.

It is well-established that obscenity is not protected expression. *Cinema I*, 83 N.C. App. at 565, 351 S.E.2d at 318. "The Supreme Court of the United States has ruled that it is constitutionally permissible to consider as without the protections of the First Amendment those materials classified as child pornography." *Id.* (citing *Ferber*, 458 U.S. at 764, 73 L. Ed. 2d at 1127, which held that pornography depicting actual children can be proscribed regardless of whether the images are obscene because of the State's paramount interest in protecting children exploited by the production process). Like the defendants in *Cinema I*, defendant here argues that N.C.G.S. §§ 14-190.17A(a) and 14-190.13 are overbroad because they extend to images of minors which do not require a live minor for their production and because they prohibit material which is accepted by the community. Although a defendant ordinarily may challenge the constitutionality of a statute only if it is unconstitutional as applied to his prosecution, he may challenge its constitutionality regardless of its application to him if the statute, "may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 37 L. Ed. 2d 830, 840 (1973). Thus, defendant's challenge on this basis is properly before the Court. But, our Courts determined, in the *Cinema I* cases, that the challenged statutes were not unconstitutionally overbroad. *Supra*.

Defendant argues that N.C.G.S. § 14-190.17A(a) contains unconstitutionally overbroad statutory definitions. The statutory definitions to which defendant objects, include those of "minor," "material," and "sexual activity," which appear in in N.C.G.S. § 14-190.13, as follows:

(2) Material—Pictures, drawings, video recordings, films or other visual depictions or representations but not material consisting entirely of written words.

. . .

(5) Sexual Activity.—Any of the following acts:

a. Masturbation, whether done alone or with another human or an animal.

. . .

c. Touching, in an act of apparent sexual stimulation or sexual abuse, of the clothed or unclothed genitals, pubic area, or buttocks of another person or the clothed or unclothed breasts of a human female.

*Id.* Defendant argues that the United States Supreme Court's holding in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 152 L. Ed. 2d 403 (2002), supports his overbreadth argument. We disagree.

In *Free Speech Coalition*, the United States Supreme Court held that the Child Pornography Prevention Act of 1996 (CPPA) was unconstitutionally overbroad because it proscribed "virtual" child pornography, as well as movies where adult actors play minor children, both of which depict minors but are produced *without using real children. Id.* at 241, 152 L. Ed. 2d at 415. The Court reasoned that because such depictions "record[] no crime and create[] no victims by [their] production, [they are] not 'intrinsically related' " to the sexual abuse of children and thus do not fall under *Ferber. Id.* at 250, 152 L. Ed. 2d at 421. In his brief, defendant contends the State made no showing that the photographs involved depict actual children. We note that defendant did not raise this issue at trial, did not assign it as error on appeal, devotes only one sentence to this argument in his brief, and has never asserted that the children in the picture were other than actual children. Even if he had, however, *Cinema I* adequately disposes of defendant's argument.

Defendant also argues that the statute in his case sweeps too broadly by criminalizing material that does not violate community standards. Specifically, defendant objects to the prohibitions found in N.C.G.S. §§ 14-190.13 (5)(a) and (c), against depictions of masturbation and touching in an act of apparent sexual stimulation. Again, defendant relies on *Free Speech Coalition*, which held that the CPAA unconstitutionally proscribed

the visual depiction of an idea—that of teenagers engaging in sexual activity—that is a fact of modern society and has been a theme in art and literature throughout the ages. Under the CPAA, images are prohibited so long as the persons *appear to be* under 18 years of age.

535 U.S. at 246-47, 152 L. Ed. 2d at 418-19 (emphasis added). The crucial distinction between the CPAA and the North Carolina statutes is that the CPAA prohibits images in which the person only *appears* to be a minor, whereas our statutes prohibit only depictions which use an *actual* minor in their production. Thus, we conclude that *Free Speech Coalition* is inapposite.

We recognize and echo the concerns expressed by defendant and noted by the *Cinema I* Courts regarding this issue, but ultimately must conclude that the statutes are constitutional. In *Cinema I*, the Court agreed with plaintiffs that many "PG" and "R" rated films which are " 'accepted entertainment' " may fall within the ambit of N.C.G.S. § 14-190.13 (5)(c). The Court held, though, that

> whatever value those . . . films may have, such value is overwhelmingly outweighed by the State's compelling interest in protecting its youth from the debilitating psychological and emotional trauma that are attendant with child pornography and bear so heavily and pervasively upon the welfare of children. Our sentiment in this regard was aptly expressed by the Court in *Ferber* [], as follows:

> We consider this the paradigmatic case of a state statute whose legitimate reach dwarfs its arguably impermissible applications.

83 N.C. App. at 566, 351 S.E.2d at 319. (internal quotations and citations omitted). Importantly, the Court further held that "whatever overbreadth may exist should be cured through a case-by-case analysis of fact situations to which its sanctions assertedly may not be applied." *Id.* Our Supreme Court, in affirming the Court of Appeals' *Cinema I* decision, reiterated that, "[f]act situations are readily conceivable in which the statutes at issue, if improperly applied, would be unconstitutional." 320 N.C. at 491, 358 S.E.2d at 385. Here, while recognizing this possibility, we are bound by the *Cinema I* decisions that the statutes were not facially overbroad and we conclude that the statutes are constitutional as applied to defendant.

III.

**[3]** Defendant also argues that the trial court erred by imposing consecutive probationary sentences, in violation of N.C. G.S. § 15A-1346 (2000). We disagree. Consecutive probationary sentences, would indeed violate N.C.G.S. § 15A-1346, which states that:

> (a) Commencement of Probation.—Except as provided in subsection (b), a period of probation commences on the day it is

imposed and runs concurrently with any other period of probation, parole, or imprisonment to which the defendant is subject during that period.

(b) Consecutive and Concurrent Sentences.—If a period of probation is being imposed at the same time a period of imprisonment is being imposed or if it is being imposed on a person already subject to an undischarged term of imprisonment, the period of probation may run either concurrently or consecutively with the term of imprisonment, as determined by the court. If not specified, it runs concurrently.

*Id.* This Court has held that imposition of consecutive terms of probation violates this statute and must be reversed. *State v. Canady*, 153 N.C. App. 455, 570 S.E.2d 262 (2002). We disagree, in that the defendant here did not receive consecutive probationary sentences.

The judgments indicate that the defendant is subject to six consecutive suspended sentences and a total of five years of probation, and that if defendant's probation is revoked, the trial court orders that he serve six consecutive sentences. The trial court may, in its discretion, sentence a defendant this way. *State v. Moore*, 162 N.C. App. 268, 592 S.E.2d 562 (2004). The court imposed 60 months of supervised probation only after making a finding that a longer period was necessary than that prescribed in N.C.G.S. § 15A-1343.2 (d) (2000) (which would have been not more than 30 months). As we conclude that defendant did not receive consecutive probationary sentences, we overrule this assignment of error.

No error.

Judges TYSON and GEER concur.