929 So.2d 99 (2006)
STATE of Louisiana
v.
Patrick Richard KUJAWA.
No. 2005 KA 0470.
Court of Appeal of Louisiana, First Circuit.
February 22, 2006.
*101 J. Phil Haney, District Attorney, Jeffrey J. Trosclair, Assistant District Attorney, Franklin, Counsel for State/Appellee State of Louisiana.
Mary E. Roper, Baton Rouge, Counsel for Defendant/Appellant Patrick Richard Kujawa.
Before: CARTER, C.J., DOWNING and GAIDRY, JJ.
GAIDRY, J.
The defendant, Patrick Richard Kujawa, was charged by bill of information on January 13, 2000 with possession of pornography involving juveniles on December 30, 1999. On January 21, 2000, the state filed an amended bill of information with the identical charge of possession of pornography involving juveniles, a violation of La. R.S. 14:81.1. However, the amended bill of information changed the charge from "Possession of Child Pornography" to "Possession of Child Pornography (62 Counts)." The defendant, with counsel present, was arraigned and pleaded not guilty to all charges. The defendant filed a motion to quash the bill of information alleging, inter alia, that the 62 counts, if true, constituted a single offense involving one course of criminal conduct.
On December 13, 2000, the defendant withdrew his not guilty plea and entered a plea of guilty to fifteen counts of possession of pornography involving juveniles. Judge Anne L. Simon sentenced the defendant to four years on each of the fifteen counts, each sentence to be served consecutively.[1] Judge Simon suspended the sentences and imposed ten years probation.
On January 27, 2004, agents of Immigration and Customs Enforcement, a division *102 of Homeland Security, executed a search warrant on the defendant's residence and found hundreds of images of hardcore child pornography on his computer. The defendant was indicted in federal court under 18 U.S.C. § 2252A(a)(5)(B) for possession of child pornography.[2] The defendant pleaded guilty to Count 1 of the federal court indictment on April 5, 2004.[3]
In May 2004, the defendant filed a Motion to Amend Sentence and a Motion to Correct Illegal Sentence, contending that the total sixty-year sentence (for the state convictions) was illegal because the maximum sentence allowable under the law was ten years. He also asserted his sentences could not properly have been suspended because the statute required the sentences to be served without the benefit of probation, parole, or suspension of sentence. Judge Keith J. Comeaux[4] found that the court was without authority to suspend the sentences and granted the defendant's motion to amend the sentences and have a new sentencing hearing on the matter.
On September 17, 2004, a resentencing hearing was held. On the same date, the defendant filed another motion to quash, arguing that the court should quash all but one count as charged, on the grounds that subjecting him to more than one ten-year sentence constituted double jeopardy.[5] After Judge Comeaux heard testimony and argument, he denied the defendant's motion to quash and sentenced the defendant to ten years at hard labor for each of the fifteen counts of child pornography. He ordered those fifteen sentences to run concurrently, but for the concurrent sentences to run consecutively to any federal sentence then in effect. The judge also imposed a $10,000.00 fine for each concurrent sentencing count.
The defendant filed a motion to reconsider sentence on September 22, 2004, which was denied by the court. The defendant now appeals, asserting the following seven assignments of error:

Assignment of Error No. 1
The trial court erred in denying the defendant's motion to quash.

Assignment of Error No. 2
The trial court erred in overruling the defense's objection to the introduction of evidence of a subsequent conviction at the resentencing hearing.

Assignment of Error No. 3
The trial court erred in considering evidence of the defendant's subsequent conviction in resentencing him.

*103 Assignment of Error No. 4

The trial court erred in failing to consider mitigating factors listed in La.C.Cr.P. art. 894.1 in resentencing the defendant.

Assignment of Error No. 5
The trial court abused its discretion in sentencing the defendant to the maximum sentence under the statute.

Assignment of Error No. 6
The trial court erred in denying the defendant's motion to reconsider sentence.

Assignment of Error No. 7
The trial court erred in imposing the maximum fine of $10,000.00.
For the following reasons, we affirm the convictions and sentences.

FACTS
Due to the defendant's guilty plea, there was no trial testimony concerning the facts in this matter. The affidavit to the arrest warrant describes the factual basis for the charges. The defendant, a Catholic priest, was assigned to Holy Cross Catholic Church in Morgan City in St. Mary Parish. On January 4, 2000, Bishop Michael Jarrell of the Diocese of Houma-Thibodaux issued a press release stating that the defendant had been found in possession of pornographic material, some of which involved pictures of minors.
Based on that information, on January 11, 2000 Detective Eric DeLaune and other city police investigators obtained a warrant and searched the defendant's living area at the rectory. They seized, among other things, the defendant's computer, a second computer hard drive, computer disks, and large jars of Vaseline. Sergeant Travis Crouch and Detective DeLaune examined the materials in a box obtained in the seizure. They found hundreds of pages of printed text and pictures. They removed 220 pages of pictures of nude persons, believed to be juveniles, in various poses and engaged in sexual acts.
On January 10, 2000, the pictures were viewed by Dr. Scott Benton, an assistant professor of pediatrics and Director of Pediatric Forensic Medicine at Louisiana State University Medical School. Dr. Benton found that 62 pages contained pictures of minor children, which, in his opinion, constituted child pornography. The other pages also depicted child pornography, according to Dr. Benton, but less clearly so.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant avers the trial court erred in denying his motion to quash. Specifically, the defendant contends that the 62 counts of possession of pornography involving juveniles should have been billed as only one count because all the pictures were seized on the same date and in the same location. The multiple charges for a single offense, he argues, constituted double jeopardy.
The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The United States Supreme Court has recognized three separate guarantees embodied in the Double Jeopardy Clause: it protects (i) against a second prosecution for the same offense after acquittal; (ii) against a second prosecution for the same offense after conviction; and (iii) against multiple punishments for the same offense. See Illinois v. Vitale, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980). Thus, the concept of double jeopardy under both the federal and state constitutions embodies the dual purpose of preventing both multiple prosecutions and multiple convictions for a single criminal wrong. *104 State v. Cotten, 438 So.2d 1156, 1160 (La. App. 1st Cir.1983), writ denied, 444 So.2d 606 (La.1984). See La.C.Cr.P. art. 591.
At issue in this case is the legality of imposing separate sentences on the defendant for convictions of fifteen counts (charged separately in a single bill of information) of violating La. R.S. 14:81.1(A)(3) by possessing fifteen separate images of child pornography, rather than imposing one sentence based on a single count and conviction for the crime of possession of pornography involving juveniles.[6]See State v. Joles, 492 So.2d 490 (La.1986), cert. denied, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987). In his brief, the defendant asserts that the rule against multiplicity, charging a single offense in more than one count, stems from the Double Jeopardy Clause and is intended to protect against multiple punishments for the same act. See United States v. Kimbrough, 69 F.3d 723, 729 (5th Cir.1995), cert. denied, 517 U.S. 1157, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996).
The issue before us is technically not one of multiplicity but rather one of determining the correct unit of prosecution. This is not an instance where the same act or transaction constitutes a violation of two distinct statutory provisions. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). This is a case, rather, where each successive or separate act has been charged as a separate crime under the same statute. See Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), and United States v. Esch, 832 F.2d 531, 541 (10th Cir.1987), cert. denied, 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988), and cert. denied, 485 U.S. 991, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988).
The issue raised by the defendant with respect to whether he has received multiple punishments for the same offense is resolved by reference to the statutory language of La. R.S. 14:81.1. It is well settled that whether a particular course of conduct involves one or more distinct offenses under a statute depends on how a legislature has defined the allowable "unit of prosecution." See Bell v. United States, 349 U.S. at 81, 75 S.Ct. at 621. Thus, whether the defendant's conduct in possessing fifteen different pictures involved one offense or fifteen separate offenses depends on how the statute defines the offense and the unit of prosecution intended by the legislature according to the statute's plain language.
We find no cases which squarely decide the precise issue here, that is, whether each count charged pursuant to La. R.S. 14:81.1, under these particular facts, constitutes a separate and distinct crime or whether all counts fall under only one crime. The issue is res nova. In construing La. R.S. 14:81.1, we consider two established rules of statutory construction: (1) all criminal statutes are construed strictly, and (2) the words of a statute must be given their everyday meaning. See State ex rel. Robinson v. Blackburn, 367 So.2d 360, 363 (La.1979) and La. R.S. 14:3.
The applicable provisions of La. R.S. 14:81.1 read as follows:
A. Pornography involving juveniles is any of the following:
...

*105 (3) The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen.
...
E. Whoever commits the crime of pornography involving juveniles shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than two years or more than ten years, without benefit of parole, probation, or suspension of sentence.
Under the statute, the contraband[7] items are described using the plural form, i.e., photographs, films, videotapes, or other visual reproductions.[8] The defendant suggests that the intent of the legislature was to prohibit a course of conduct, e.g., the possession of pictures,[9] be it fifteen or fifty, rather than to authorize the multiple charging of a defendant for each separate and distinct picture possessed. The mere fact that words are in the plural, however, is not dispositive of legislative intent.[10]
Several Louisiana decisions have found that a single count was the proper charge regardless of the number of prohibited acts performed by the defendant. In State v. Freeman, 411 So.2d 1068 (La.1982), two defendants were each convicted on three counts of hunting deer at night and three counts of hunting or taking deer in closed season. The statute at issue prohibited the hunting of "deer" at certain proscribed times. The defendants argued that finding them both guilty of six violations of the statute, when in fact only two existed, subjected them to triple punishment for each of the two violations. The Supreme Court found that the word "deer" without being preceded by an article of "a," "an" or "the," was not limited to the singular, but also encompassed the plural form. Id. at 1072. The court found that if the legislative aim had been to make the taking of each individual deer an offense, it would have clearly expressed that intent, and to construe the statutory provisions otherwise would permit prosecutors to create multiple offenses without a legislative grant of authority. Id. See also State v. Hungerford, 278 So.2d 33 (La.1973), and State v. Price, 475 So.2d 6 (La.App. 4th *106 Cir.1985), writ denied, 484 So.2d 664 (La. 1986).
A review of the jurisprudence in other jurisdictions reveals that there is no clear consensus on what constitutes the proper unit of prosecution when interpreting statutes prohibiting child pornography or similar offenses.[11] The following decisions found that the indictments against the defendants containing multiple counts for a single offense impermissibly charged each act as a separate unit of prosecution.
In Bell v. United States, 349 U.S. at 82, 75 S.Ct. at 621, the relevant provision of the Mann Act stated:
Whoever knowingly transports in interstate or foreign commerce ... any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose....
...
Shall be fined not more than $5,000 or imprisoned not more than five years, or both.
The defendant in Bell, having transported two women on the same trip and in the same vehicle, pleaded guilty to two counts of violating the Mann Act, one count for each woman. On appeal, the defendant argued he committed only a single offense and could not be subjected to cumulative punishment under the two counts. The Court of Appeals affirmed the District Court, finding that two separate offenses were committed because, even though the act of transportation was a single one, the unlawful purpose was necessarily personal as to each of the women.
The United States Supreme Court reversed the Court of Appeals and stated:
Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so? It has not done so in words in the provisions defining the crime and fixing its punishment.
...
It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions.
...
When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.
...
This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on a crime. It merely means that if Congress does not *107 fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes.
Bell v. United States, 349 U.S. at 82-84, 75 S.Ct. at 622.
In United States v. Reedy, 304 F.3d 358 (5th Cir.2002), the defendants owned and operated Landslide, Inc., an Internet website that provided a computerized credit card verification service used by various webmasters whose websites contained child pornography. The defendants were charged with 43 counts (one count for each individual image) of committing activities relating to material constituting or containing child pornography and aiding and abetting in violation of 18 U.S.C. §§ 2252A and 2. The applicable law made it a crime to knowingly ship or transport in interstate commerce "any visual depiction" of a minor engaging in sexually explicit conduct. "Visual depiction" was defined in § 2256(5) as "including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means." In § 2252(a)(4)(b), however, "visual depiction" was defined as including one or several images, i.e., "books, magazines, periodicals, films, video tapes, ...." The defendants in Reedy argued that there were ten websites containing child pornography and that accordingly there should have been only ten counts for each violation of the applicable statutory provisions instead of 43 counts, a count for each of the 43 pictures. The court found that the word "any" was a source of ambiguity. Id. at 365. In finding the criminal statute failed to provide an answer, the Fifth Circuit relied on Bell v. United States, supra, and invoked the rule of lenity, finding that the district court erred in permitting the prosecution to group the counts by individual image rather than by website. Id. at 367-68.[12]
In contrast, the following decisions found that each separate count against the defendant was an allowable unit of prosecution.
In United States v. Esch, supra, the defendants were charged with sixteen counts of sexual exploitation of children for photographing their children and themselves engaged in sexually explicit conduct. The co-defendants then sold these photographs. The applicable statutory provision, 18 U.S.C. § 2251(a), proscribed the use of a minor to engage in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." In construing the statute, the Tenth Circuit found that each use of a minor to create a visual depiction constituted a separate and distinct violation. The Tenth Circuit noted that the inquiry as to what constituted the correct unit of prosecution focused in part on the identification of the key element of the federal offense. The court concluded the key element of the offense was the use of a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction of such conduct. Id. at 541-42. The fact that multiple photographs were sequentially produced during a single photographing session was deemed irrelevant because each photograph depended upon a separate and distinct use of the children. Id. at 542. The court distinguished United States v. Meyer, 602 F.Supp. 1480 (S.D.Cal.1985). In Meyer, the transportation and importation of a binder of pornographic *108 pictures were simultaneous, while the criminal acts in Esch, according to the court, were not simultaneous. The court concluded that the indictment properly charged separate counts for each of the photographs produced. Id.
In Vineyard v. Texas, 958 S.W.2d 834 (Tex.Crim.App.1998) (en banc), the defendant was convicted of possession of child pornography for possessing a videotape containing a "film image" depicting a child engaging in sexual conduct, and for possessing a photograph with a "film image" depicting a child engaging in sexual conduct. The applicable law provided, in pertinent part, that a person commits the offense of possession of child pornography if he "possesses material containing a film image" that visually depicts a child engaging in sexual conduct. In reversing the defendant's second conviction for violation of the double jeopardy clauses, the appellate court found that the legislature did not intend that the simultaneous possession of more than one film image created more than one unit of prosecution. The court relied, in part, on § 43.26(f) of the Texas penal code, which provided that a person possessing "six or more identical film images depicting a child ... is presumed to possess the film image with the intent to promote the material." The appellate court found that this provision was evidence of the legislature's intent not to establish separate and distinct offenses in cases like this. The Court of Criminal Appeals disagreed with the appellate court and found that § 43.26(f) merely created a presumption that a person who possesses six or more identical film images possesses them with the intent to promote them. Id. at 838. The Court of Criminal Appeals held that the legislature intended to make possession of each item of child pornography an allowable unit of prosecution, basing its rationale, in part, on the legislature's use of the singular term "film image" and, in part, because of the harm to each individual child created by the offense of possession of child pornography. Id.
In State v. Mather, 264 Neb. 182, 646 N.W.2d 605 (2002), the defendant was convicted of eighteen counts of visual depiction of sexually explicit conduct which had a child as one of its participants in violation of the applicable statute, which provided in pertinent part that it "shall be unlawful for a person to knowingly make, publish, direct, create, provide, or in any manner generate any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers." "Visual depiction" was defined by the applicable statute as a "live performance or photographic representation." The defendant, a photographer, had photographed a nude or partially nude seventeen-year-old female. The defendant argued that his conduct amounted to one count because all eighteen photographs were taken of the same subject the same day as part of one ongoing or continuous act. The court found the plain language of the statute focused on "any visual depiction." It further found that the singular form of "photographic representation" in the statute read in conjunction with the term "any" indicated that the legislature intended prosecution for each differing photographic representation. Id., 264 Neb. at 187, 646 N.W.2d at 610-11. Thus, in making multiple different prohibited depictions, the defendant was held to have committed multiple offenses, even though each differing visual depiction involved the same subject captured in a narrow time-frame.
In State v. Multaler, 252 Wis.2d 54, 643 N.W.2d 437 (2002), the defendant pleaded guilty to 28 counts of child pornography. The pornographic images were found on two computer disks labeled "Child Pornography" *109 and "Child Pornography II." The defendant argued that the legislatively intended unit of prosecution was determined by the number of disks, not the number of images. The applicable statute provided that whoever possessed "any undeveloped film, photographic negative, photograph... or other pictorial reproduction ... of a child engaged in sexually explicit conduct... is guilty of a Class E felony ...." The defendant contended the legislature intended punishment based not upon an image but rather upon the medium on which the images were found. The court disagreed and found that nothing in the plain language of the statute supported the defendant's position that the legislature intended that a computer disk, rather than an image, was the intended unit of prosecution. Id., 252 Wis.2d at 83, 643 N.W.2d at 451. In noting that the statutory language provided that a possessor of "any photograph ... or other pictorial reproduction" violated the statute, the court found that the singular formulation of those items covered under the statute modified the term "any" and was evidence that the legislature intended prosecution for each photograph or pictorial reproduction. Id.[13]
In State v. Schaefer, 266 Wis.2d 719, 668 N.W.2d 760 (App.2003), review denied, 266 Wis.2d 61, 671 N.W.2d 848 (2003), the defendant pleaded no contest to eighteen counts of possession of child pornography. The pornography was in the form of individual images found on a Zip disk removed from the defendant's computer. The defendant argued that the charges are identical in fact because all the pornographic photographs were on a single computer Zip disk, and there was no evidence that he acquired each image with a separate volitional act.[14] The court found that Multaler was dispositive of the issue and concluded that it was reasonable to assume that the existence of multiple files on the Zip disk demonstrated that the defendant made a new decision to download a particular image file. Therefore, each image file was held to represent a new volitional departure.[15]Id., 266 Wis.2d at 752, 668 N.W.2d at 777. The defendant further argued that the use of the word "any" to refer to the prohibited "pictorial reproduction" permitted two reasonable interpretations regarding the allowable unit of prosecution and that the rule of lenity compelled construction of the applicable statute in his favor. Relying again on *110 Multaler, which considered and rejected this argument, the court concluded that it was bound by that precedent. Id., 266 Wis.2d at 755, 668 N.W.2d at 778.
In Commonwealth v. Davidson, 860 A.2d 575 (Pa.Super.2004), authorities found approximately 500 images of child pornography on the defendant's computer hard drive. The defendant was convicted of 28 counts of sexual abuse of children. The applicable statutory provision stated in pertinent part:
(d) Possession of child pornography.
(1) Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.
The defendant argued that there was a single possessory offense. The court disagreed, finding that the offenses charged stemmed from 28 different criminal acts. The 28 pornographic pictures found involved different children or, in some cases, the same children photographed multiple times. The court reasoned that each photograph of each child victimized that child and subjected him or her to precisely the type of harm the statute seeks to prevent. Id. at 583. See also Slavek v. Hinkle, 359 F.Supp.2d 473, 477, 496 (E.D.Va.2005).
In State v. Howell, 169 N.C.App. 58, 609 S.E.2d 417 (2005), authorities found on the defendant's computer hard drive over 200 pictures depicting minors engaged in sexual acts. The images were received in five Zip files, and then stored on the computer's hard drive in five separate directories. The defendant was convicted of 43 counts of third degree sexual exploitation of a minor. The applicable North Carolina statutory provision provided in pertinent part that a "person commits the offense of third degree sexual exploitation of a minor if ... he possesses material that contains a visual representation of a minor engaging in sexual activity." "Material" was defined as "[p]ictures, drawings, video recordings, films or other visual depictions or representations . ..." The defendant contended that because the definition of "material" specified items in the plural, the photographs found on his computer constituted only a single charge. The court disagreed and found that the listing of plural items in the definition of "material" was merely a matter of style. Id., 169 N.C.App. at 61-2, 609 S.E.2d at 419. The court also found that the plain language of the statute under which the defendant was convicted stated that possession of material containing "a visual representation" allowed for multiple convictions under the circumstances. Id., 169 N.C.App. at 62, 609 S.E.2d at 421. The defendant also argued that the evidence supported, at most, five counts because there were five downloads of one Zip file each. The defendant contended that each of the five downloaded Zip files was the technological equivalent of a digital magazine. The court disagreed, finding that the evidence tended to show that the 200 individual photographs on the defendant's computer, found within the five Zip directories, had been opened on his computer. It concluded that since each of the images had been opened and saved on the hard drive, the defendant "possessed" each of the 43 images. Id., 169 N.C.App. at 64, 609 S.E.2d at 421.
Based on our review of the jurisprudence, we find the defendant's emphasis upon the plural form of the contraband items is misplaced. A fundamental rule of statutory interpretation is that a statute should be considered as a whole, and its separate provisions considered in their context to each other. See La. R.S. 1:3 & *111 14:3. A careful reading of the entire statute reveals that the legislative intent was to proscribe possession of any single image. The use of the plural form was clearly a matter of grammatical style and not suggestive of an intent to establish a unit of prosecution based upon a broad course of conduct involving multiple contraband images. See La. R.S. 1:7. For example, paragraph C of La. R.S. 14:81.1 provides:
Possession of three or more of the same photographs, films, videotapes, or other visual reproductions shall be prima facie evidence of intent to sell or distribute.
It can hardly be considered reasonable in this context to interpret the phrase "the same photographs, films, videotapes, or other visual representations" as referring to identical sets of multiple images, as opposed to the same image, in order for the presumption to apply. This conclusion is reinforced by consideration of the specific language of paragraph F:

Each photograph, film, videotape, or other reproduction of any sexual conduct involving a child under the age of seventeen shall be contraband and shall be seized and disposed of in accordance with law.[16] (Emphasis supplied.)
Further, the use of the singular form of the contraband images in La. R.S. 14:81.1(G), although not as persuasive, supports this conclusion.
Finally, we conclude that the use of the article "any" to modify the proscribed images evidences a clear legislative intent that each such image constitutes a basis for a unit of prosecution. See State v. Multaler, 252 Wis.2d at 83, 643 N.W.2d at 451; State v. Cobb, 143 N.H. 638, 647-48, 732 A.2d 425, 433-34 (1999). This interpretation best accords with the unequivocal legislative intent to effectively suppress the particular evil addressed by the statute. The trial court did not err in denying the defendant's motion to quash.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NO. 2 AND NO. 3
In these assignments of error, the defendant avers the trial court erred in overruling his objection to the introduction of evidence of a subsequent conviction at the resentencing hearing. Specifically, the defendant contends that the trial court should not have considered his subsequent federal conviction because it was not in existence at the time he was originally sentenced on April 30, 2001. The defendant further contends that the trial court at resentencing did not refer to the intent of the original sentencing judge.
Contrary to the defendant's contention, it is irrelevant that his federal conviction for possession of child pornography had not yet occurred when he was originally sentenced on April 30, 2001. The sources of information from which a sentencing court may draw are extensive, and traditional rules of evidence are not bars to consideration of otherwise relevant information. Prior criminal activity is one of the factors under art. 894.1 to be considered by the trial judge in sentencing a defendant. State v. Washington, 414 So.2d 313, 315 (La.1982). At the time of resentencing on September 17, 2004, the defendant's federal conviction, a violation of his probation, was prior criminal activity and therefore was proper for the trial judge to consider.
The judge may make ministerial corrections to a sentence imposed by a predecessor unless he or she entertains a *112 reasonable doubt as to the intent of the original sentencing judge and the validity of the sentence imposed by the original sentencing judge. In all cases, a district judge retains the discretion to vacate the sentence originally imposed and to resentence the inmate in open court. State v. Harris, 93-1098, p. 2 (La.1/5/96), 665 So.2d 1164, 1164.
In sentencing the defendant at the resentencing hearing, it is clear from the record that while the trial court may have considered the intent of the original sentencing judge, there was then a new federal conviction that was not of course present for the original sentencing judge's consideration. The trial court noted that while the defendant applied to the court on several occasions for lessening the conditions of his probation, and while Dr. Maureen Brennan[17] had testified that the defendant was making significant progress in his treatment for problems with child pornography, the defendant had subsequently been convicted of the same offense. Furthermore, as argued by the State at the hearing, the defendant had progressed from photographs to videos in the subsequent federal conviction.
We find that the trial court properly considered the intent of the original sentencing judge, noted the defendant's subsequent federal conviction for the same illegal conduct, and sentenced the defendant accordingly. These assignments of error are without merit.

ASSIGNMENTS OF ERROR NO. 4, NO. 5 AND NO. 6
In these assignments of error, the defendant argues that the trial court erred in denying his motion to reconsider sentence. Specifically, the defendant contends that in failing to consider mitigating factors, the trial court abused its discretion in sentencing him to the maximum sentence under the statute.
Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Louisiana Code of Criminal Procedure art. 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria.
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. State v. Andrews, 94-0842, pp. 8-9 (La.App. 1st Cir.5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See State v. Holts, 525 So.2d 1241, 1245 (La.App. 1st Cir. 1988).
The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is *113 unnecessary even where there has not been full compliance with art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La.1982). The trial judge should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. State v. Jones, 398 So.2d 1049, 1051-1052 (La.1981).
In applying La.C.Cr.P. art. 894.1, the trial court noted that the defendant knew or should have known that the victims were particularly vulnerable due to their extreme youth and that the defendant thrived on photographs of young people. The court further found the nature of this type of offense repulsive in that children were being exploited by the defendant.
The defendant contends the trial court failed to consider the mitigating factor of being a first offender with no history of prior delinquency or criminal activity. However, at the time of resentencing, the defendant was not a first offender. While on probation, the defendant again pleaded guilty on or about January 27, 2004, to possession of child pornography in federal district court for his criminal actions. In light of the defendant's federal conviction of essentially the same offense, the trial court found that a lesser sentence would deprecate the seriousness of the offense, and that there was an undue risk that during a suspended or probationary period the defendant would commit another crime. The trial court found the defendant was in need of correctional treatment or a custodial environment that could best be provided by commitment to an institution.
The sentencing range for possession of pornography involving juveniles is two to ten years imprisonment at hard labor. La. R.S. 14:81.1(E). The trial court imposed a ten-year sentence at hard labor for each of the fifteen counts, with each count to run concurrently with each other. Considering the trial court's careful consideration of the circumstances, the detestable offense of possession of pornography involving juveniles, the defendant's position of trust as a priest, the defendant's recent criminal history of re-offending, and the fact that the defendant was sentenced to only ten years imprisonment when he could have been sentenced to 150 years had the trial court chosen to run the sentences consecutively, the sentences imposed by the trial court are not grossly disproportionate to the severity of the offense and, therefore, are not unconstitutionally excessive. The trial court did not err in denying the defendant's motion to reconsider sentence. These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 7
In his seventh assignment of error, the defendant avers the trial court erred in fining him $10,000.00 for each separate count. Specifically, the defendant contends the trial court fined him only because it was erroneously informed by the state that a fine was mandatory pursuant to the statute.
Under La. R.S. 14:81.1(E), whoever commits the crime of pornography involving juveniles shall be fined not more than ten thousand dollars. A $10,000.00 fine for each count was proper and within the great discretion of the trial court in imposing sentence. We will not second-guess whether, or to what extent, the trial court may have been influenced by the state in imposing the fines and their amounts.[18] Moreover, the defendant made *114 no objection when the trial court imposed the fines. Because the defendant failed to make an objection, the issue cannot now be urged on appeal. See La. C.E. art. 103(A)(1); La.C.Cr.P. art. 841; and State v. LeBlanc, 618 So.2d 949, 958-959 (La.App. 1st Cir.1993), writ denied, 95-2216 (La.10/4/96), 679 So.2d 1372. This assignment of error is without merit.
CONVICTIONS AND SENTENCES AFFIRMED.
DOWNING, J., dissents and assigns reasons.
DOWNING, J., dissents and assigns reasons.
I respectfully dissent. The majority takes what is, at best, an ambiguous statute and reaches a result that is contrary to established principles of statutory interpretation.
It is not clear from a plain reading of La. R.S. 14:81.1 what constitutes an allowable unit of prosecution. While it is not unreasonable to interpret the plural form of the prohibited items in La. R.S. 14:81.1(A)(3) as suggestive of permitting only one count regardless of the number of pictures possessed, such an interpretation is in no way definitive, or even necessarily preferred. Indeed, a rational argument could be made for either of the conflicting constructions.[1] The rule of lenity applies not only to interpretations of the substantive ambit of criminal laws but also to the penalties imposed by those laws. State v. Campbell, 03-3035, p. 9 (La.7/6/04), 877 So.2d 112, 118. Where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant. See Rewis v. United States, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971).
In giving a genuine construction consistent with the plain language of La. R.S. 14:81.1(A)(3), which is, at best, ambiguous as to the allowable unit of prosecution, and keeping in mind the strict construction mandated under the rule of lenity, the defendant's sentences, which imposed ten years for each count of possession of pornography involving juveniles, should not stand. See Campbell, 03-3035 at pp. 9-10, 877 So.2d at 118. I conclude under the particular facts herein that the trial court erred in permitting the prosecution to charge separate counts for each picture possessed.[2]
NOTES
[1] Judge Simon did not make any reference to the sentences being at hard labor.
[2] The indictment was for a single count, which stated in pertinent part: "On or about the 27th day of January, 2004, ... Patrick R. Kujawa, did knowingly and intentionally possess a computer containing child pornography as defined in Title 18, United States Code, Section 2256, which had been transported in interstate commerce ...."
[3] The record does not contain the sentencing hearing for the federal offense, so the precise sentence the defendant received for this offense is unknown. It is clear, however, that he faced a minimum sentence of ten years.
[4] Judge Simon was no longer involved in the matter.
[5] At his initial felony plea hearing before Judge Simon, the defendant did not reserve any rights for a Crosby appeal. A plea of guilty waives all nonjurisdictional defects in the proceeding prior to the plea unless the defendant specifically reserves his right to raise the objection on appeal. State v. Haslom, 468 So.2d 1354, 1356 (La.App. 1st Cir. 1985). However, even an unqualified plea of guilty will not waive "jurisdictional" defects, including double jeopardy. See State ex rel. Robinson v. Blackburn, 367 So.2d 360, 364 (La.1979); State v. Crosby, 338 So.2d 584, 588 (La.1976).
[6] Presumably, the images possessed by the defendant depicted multiple different individuals. At the defendant's resentencing, the trial court stated: "The offense involves multipl[e] victims, as [sic] from the photographs, which indicate separate sentences or incidents occurred." The images which are the subject of the fifteen of the original 62 counts to which the defendant pleaded are not identified in the record.
[7] Our analysis is confined to the act of possession since the defendant here was charged with possession only.
[8] The legislative history provides no further guide to the meaning of these words.
[9] "Pictures" could be "photographs" or "other visual reproductions" under La. R.S 14:81.1(A)(3). The record refers to the items containing child pornography as "pictures."
[10] See, e.g., State v. Howell, 169 N.C.App. 58, 609 S.E.2d 417, 419 (2005), where a North Carolina appeals court found that the use of the plural in defining "material" (i.e. "material" defined as "pictures," "drawings," "video recordings," etc.) was merely a matter of style.

In its brief, the state contends that the words "photographs, films, videotapes, or other visual reproductions" are qualified with the words "of a child" rather than "of any child." As such, the state asserts, it was the legislative intention that each visual reproduction of a different child is a separate crime. We do not find any significance in the use of the word "a" instead of "any" in the statute. The use of the words "a child" rather than "any child" does not, as asserted by the state, clarify legislative intent with regard to the proper unit of prosecution. The use of "a child" rather than "any child" is not a source of ambiguity. The central object of the statute does not relate to the terms "a child" or "any child," but rather to the possession of items containing child pornography. The proper focus, thus, is on the legislative intent in designating prohibited items using the plural form. The unit of prosecution refers to the offense proscribed by the statute, not the class of persons the statute protects.
[11] An inherent difficulty with this approach is that the various provisions of the other states' laws do not, to the degree necessary for any reliable comparison, parallel the applicable provisions of our own law. Furthermore, the factual scenarios of the various decisions are so diverse that application of a similar legal analysis to the case at hand would provide little practical guidance in resolving the issue, since any decision without virtually identical facts would be readily distinguishable. See, e.g., Bell v. United States, 349 U.S. at 83, 75 S.Ct. at 622, where Justice Frankfurter stated:

[I]t will not promote guiding analysis to indulge in what might be called the color-matching of prior decisions concerned with `the unit of prosecution' in order to determine how near to, or how far from, the problem under this statute the answers are that have been given under other statutes.
We nevertheless review jurisprudence from other states to demonstrate the various analyses employed by those courts to resolve the issue.
[12] It should be noted, however, that the result in Reedy was expressly limited by the court to the particular factual situation present, i.e., "a security screening system that aggregates websites containing child pornography." Id. at 368, n. 14.
[13] The court in Multaler also stated:

In essence, because it appears that the images on the disks were photographs of actual children, the disks served as electronic photo albums. The language of § 948.12 shows that the legislature would deem it appropriate to bring separate charges for separate photographs in a traditional photo album. Similarly, the legislature presumably would deem separate charges appropriate for individual images displayed in an electronic photo album.
Multaler, 252 Wis.2d at 84, 643 N.W.2d at 451.
[14] The court stated that the time element did not turn on the number of seconds or minutes between the alleged criminal acts. The issue, rather, was whether the defendant had sufficient time for reflection between the acts to re-commit himself to the criminal conduct. Schaefer, 266 Wis.2d at 751, 668 N.W.2d at 776.
[15] The defendant argued there was no statement indicating the images were downloaded over a period of time, so the new volitional departure standard was not met. The defendant submitted that the only thing known about the images is that they were possessed simultaneously on a Zip disk. The court found the defendant's argument better suited to a multiplicity objection made during or at the end of trial. The court noted that evidence that images were copied wholesale from another disk or computer could convince the trial court that the charges were not different in fact and therefore only one count should be considered by the jury. Schaefer, 266 Wis.2d at 753-754, 668 N.W.2d at 777.
[16] The language of this paragraph was later rewritten by 2003 La. Acts No. 1245, § 1.
[17] Dr. Brennan was the defendant's treating psychologist when he was originally sentenced.
[18] Following is the relevant discussion at the resentencing hearing:

Mr. Senette [prosecutor]: How about a fine, Your Honor, is any fine going to be imposed in this case?
The Court: Any fine ofdo you I [sic] have to impose a fine?
Mr. Senette: Ten thousand dollars per count, Your Honor.
The Court: Shall impose?
Mr. Marquet [defense counsel]: Let's read it, Judge.
Mr. Senette: That's correct, Your Honor.
The Court: Okay. Now I'm going to impose a ten thousand dollar ($10,000) [sic] of Mr. Kujawa.
Mr. Senette: For each count, Your Honor?
The Court: Yeah, each count to run concurrently, plus cost. All right.
[1] Finding that the allowable unit of prosecution is for each picture possessed leads to disparate sentencing schemes. On the other hand, finding that individual pictures are not the proper unit of prosecution means that whether a defendant possesses 10 pictures or 1,000 pictures, the maximum sentence would be 10 years. It is also unclear under the statute whether the downloading of pictures one at a time over a course of minutes or hours is analytically distinguishable from simply possessing the pictures simultaneously. But see Official Revision Comment (d) to La. Code Crim. P. art. 596 (Requirements for double jeopardy), which states:

Clause (2) of the above Art. 596 is necessary to prevent multiple prosecutions for continuous offenses. For example, possession of stolen goods or narcotics may continue over a long period of time and may involve more than one object. Yet, obviously there should be only one prosecution for what is in effect one criminal course of conduct.
[2] Based on this record, I would not establish any bright-line rule regarding what constitutes an allowable unit for prosecution of possession of pornography involving juveniles. This decision is confined to the unique facts of this case. Because the defendant pled guilty, there is little information in the record regarding the facts of this case. The arrest warrant affidavit indicates that authorities received information that the defendant had been downloading pornography from the internet. When authorities arrived at the defendant's living area at the Holy Cross Rectory, they found "computer printed pictures" and "printed text" in a box. The computer the defendant was using had access to the internet. While a reasonable assumption would be that the defendant downloaded and printed these pictures from his computer, the record does not establish this presumption as fact. We do not know how the defendant came into possession of these pictures. It is not inconceivable, for example, that someone gave him these pictures in a single transaction. The defendant's computer was seized, as well as a second hard drive that was found in his living area. The precise content retrieved from those hard drives is unknown. Whatever the content, it appears the FBI thought it did not warrant prosecution. At the defendant's resentencing hearing on September 17, 2004, Detective Eric DeLaune testified on cross-examination as follows:

Q. You indicated to the Court that in addition to the things you've mentioned that a computer was also seized from Mr. Kujawa?
A. In the first, in the first case, yes, sir.
Q. In the State case.
A. Yes, sir.
Q. And you're the one that seized that computer?
A. Yes, sir.
Q. Was that computer analyzed?
A. Yes, it was.
Q. Was any, anything of contraband or illegal nature found on that computer?
A. Yes. There were images gleaned from the computer as well. But FBI had that, they chose not to prosecute.
* * * * *
Q. The analysis was done by federal agents?
A. By the FBI. Yes, sir.
Q. On the personal computer seized by, by you.
A. On the, on the state case. Yes sir.
Q. State's case. Have you seen any reports from authorities like Dr. Denton that have identified any images that were found on the computer seized in the state's case that was analyzed by the federal government that was in fact child pornography?
A. By the state case, on the state case, no sir.
Q. So as you sit here today you can't identify with any degree of accuracy whatever, based on any authority, that whatever images were found on the computer seized in the state case from Mr. Kujawa in fact contained child pornography.
A. No, sir.