**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE       )
                            )     Case No. 1511007472
      v.                  )
                            )
ISAIAH PALMER,         )
                            )
     Defendant.        )

Submitted: April 19, 2016
Decided:   May 3, 2016

Upon Defendant Isaiah Palmer's Motion to Suppress Evidence
***DENIED***

John S. Taylor, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for the State of Delaware.*

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, Delaware, *Attorney for Defendant.*

**DAVIS, J.**

On March 11, 2016, defendant, Isaiah Palmer filed the Motion to Suppress Evidence (the "Motion") collected from his residence during a search executed pursuant to a warrant (the "Warrant") issued by the Justice of the Peace Court 20. Officers from the Wilmington Police Department ("WPD") searched Mr. Palmer's residence and "all curtilage" and seized a firearm found in the basement of the residence, heroin in a recycling can outside of the residence and ammunition in a shed. For the reasons set forth below, the Motion is **DENIED**.

**BACKGROUND**

**FACTUAL BACKGROUND**[1]

During the second week of October 2015, a confidential informant informed officers from

---

[1] The parties agree that the Court should apply a "four corners" test in deciding whether to suppress the evidence in this case. As discussed below, the Court is only to look to the facts contained in the search warrant and the supporting affidavit when applying a "four corners" test. Accordingly, all the facts in this memorandum opinion and order come from the warrant and the supporting affidavit.

WPD that a residence located at 311 W. 29th Street in Wilmington, Delaware (the "Residence") was used as a "stash house" for weapons.[2]   WPD then conducted surveillance of the Residence during the fifth week of October 2015.[3]   While conducting surveillance, WPD observed a high frequency of activity coming from the Residence.[4]   Specifically, WPD saw multiple persons approach the Residence, enter the Residence for a short period of time and then leave.[5]   One of the Warrant's affiants stated that, based on his training and experience, this type of high frequency of activity is consistent with "stash houses" that traffic in illegal drugs and/or firearms.[6]   WPD did not make any vehicle or pedestrian stops of persons leaving the Residence due to the Warrant's affiant's "knowledge of the surrounding community and to ensure that the investigation was not compromised…."[7]

During the first week of November 2015, a past proven and reliable confidential informant (the "CI") informed WPD that Mr. Palmer lived at the Residence.[8]   The CI stated that Mr. Palmer was on probation.[9]   In addition, the CI told WPD that Mr. Palmer was using the Residence as a "stash house" for other persons' firearms and that the firearms were being kept in an exterior shed at the Residence.[10]

According to one of the Warrant's affiants, Mr. Palmer is familiar with WPD due to prior police contact.[11]   The Warrant's affiant stated that he knew that Mr. Palmer had been convicted of

---

[2] Warrant at ¶2.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.* at ¶3.
[9] *Id.*
[10] *Id.*
[11] *Id.* at ¶4.

the crime of Assault Second and was on Level 3 probation.[12]   Mr. Palmer had also recently been convicted of Conspiracy Second Degree stemming from a racketeering case where others had been charged with drug and firearm offenses.[13]   Because Mr. Palmer is a convicted felon, Mr. Palmer is a person prohibited from possessing firearms or ammunition.[14]   WPD confirmed that Mr. Palmer's residence of record was the Residence.[15]

On November 11, 2015, a shooting occurred in the area of West 29th Street and North Jefferson Street.[16]   The Warrant states that this shooting happened within fifty feet from the Residence.[17]   The person who reported the shooting did not provide any personal information and responding WPD officers did not locate a crime scene or victims.[18]

In summing up the basis for the Warrant, the Warrant's affiants believed that Mr. Palmer was storing and using weapons at the Residence because:

> Your affiants can state that: This officer believes that due to the abundance of information received from confidential sources, and a past proven and reliable confidential source whom both confirmed that 311 W 29[th] Street was being used as a stash house for firearms by PALMER, and the extensive weapons and violent history which was revealed by DELJIS regarding PALMER, and the recent shooting that was called in WILCOMM which occurred within close proximity of 311 W 29[th] Street, this officer believes that there are weapons which are being stored and used at the aforementioned residence by Isaiha Palmer (BMN, DOB 7-8-1991).   This officer further corroborated the information through surveillance which revealed multiple subjects coming in and out of 311 W 29[th] Street for short periods of time throughout the day.[19]

On November 12, 2015, a magistrate judge (the "Magistrate") issued the Warrant.   The

---

[12] *Id.*

[13] *Id.*

[14] *Id.*   The Warrant states that WPD reviewed Mr. Palmer's record on DELJIS and confirmed that Mr. Palmer is a seven time convicted felon with convictions relating to firearm possession, drug dealing and assaults.

[15] *Id.* at ¶6.

[16] *Id.* at ¶5.

[17] *Id.*

[18] *Id.*

[19] *Id.* at ¶7.

Warrant authorized the search for the entire Residence and any and all curtilages for firearms, ammunition and any paperwork pertaining to the purchase of the firearms or ammunition.[20]

When executing the Warrant, WPD located 2,581 bags of heroin in a cubby hole located next to the rear door and in trashcans located next to the Residence. In addition, WPD found five separate types of ammunition in the rear shed of the Residence. Finally, the WPD located, near Mr. Palmer's bed in the Residence's basement, a loaded .45 caliber handgun. WPD arrested Mr. Palmer. Subsequently, the Grand Jury indicted Mr. Palmer on two counts of Possession of a Firearm by a Person Prohibited, two counts of Possession of a Firearm During the Commission of a Felony, Drug Dealing and Aggravated Possession.

On or about March 11, 2016, Mr. Palmer filed the Motion. The State submitted its State's Response to the Defendant's Motion to Suppress (the "Response") on April 19, 2016. The Court has determined after a review of the Motion and the Response, that a hearing is not necessary and that the Motion should be denied for the reasons set forth below.

## THE PARTIES CONTENTIONS

### MR. PALMER

Mr. Palmer contends that the Warrant does not set forth sufficient facts to allow an issuing magistrate to determine whether probable cause existed that would justify the issuance of the Warrant. Mr. Palmer argues that two of the facts – the November 11, 2015 shooting and that Mr. Palmer was on probation and had a felony record – are unhelpful to the probable cause analysis. Mr. Palmer contends that these two facts are irrelevant to the analysis that Mr. Palmer was committing or was about to commit a crime, or that he possessed a weapon.[21] Mr. Palmer then

---

[20] *Id.* at p. 1.
[21] Motion at ¶10.

argues that the remaining facts are insufficient to support a finding of probable cause to support the issuance of the Warrant. Next, Mr. Palmer contends that the increased activity at the Residence should not be considered in the probable cause analysis because: (i) WPD did not witness individuals coming and going from the Residence being in possession of guns, and (ii) WPD did not corroborate the informants' tips.[22]

**THE STATE**

The State contends that the facts in the Warrant support a finding of probable cause by the issuing magistrate. The State argues that the two confidential informants' tips and the corroborating observations by WPD are enough to support the probable cause finding.[23] The State claims that Mr. Palmer's recent criminal history is also relevant. The State argues that this type of information may be considered in determining whether there is a fair probability that evidence of a crime will be found in a defendant's home.[24] Finally, the State contends that the timing of the shooting and its proximity to the Residence is another fact that the Magistrate could consider when determining whether probable cause exists for the issuance of a warrant.[25]

## APPLICABLE LEGAL STANDARDS

On a motion to suppress challenging the validity of a search warrant, the defendant has the burden of establishing that a search or seizure violated his rights under the United States Constitution, the Delaware Constitution, or the Delaware Code.[26] The defendant must show he is

---

22  *Id.* at ¶11.
23  Response at p. 5.
24  *Id.* at p. 6.
25  *Id.*
26 *State v. Holton,* I.D. No. 1101000487, 2011 WL 4638781, at * 2 (Del. Super. Sept. 22, 2011)*; State v. Cannon,* I.D. No. 0701003821, 2007 WL 1849022, at *2 (Del. Super. June 27 2007); *see also Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).

entitled to relief by a preponderance of the evidence.[27]

Under the Delaware and the United States Constitutions, "a search warrant may be issued only upon a showing of probable cause."[28]   Delaware constitutional requirements for search warrants are codified in Title 11, Sections 2306 and 2307 of the Delaware Code.   Pursuant to Section 2306, the application for a search warrant must "state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated [in the search warrant application] and shall recite the facts upon which suspicion is founded."[29]   Under Section 2307, a warrant may issue only upon a judicial determination of probable cause.[30]

Delaware courts engage in a four-corners test to make a probable cause determination.[31]  Within the four-corners of the search warrant affidavit, the document must present sufficient facts for a judge or magistrate to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place.[32]

When determining whether probable cause to obtain a search warrant exists, the Court will apply a totality of the circumstances test.[33]   This analysis allows a judge or magistrate to draw

---

27 *Id.*
28 U.S. Const. Amend. IV; Del. Const. art. I, § 6; *Sisson*, 903 A.2d at 296.
29 11 *Del. C.* § 2306 (2001) ("The application or complaint for a search warrant shall be in writing, signed by the complainant and verified by oath or affirmation. It shall designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is founded.").
30 11 Del. C. § 2307 (2001) ("If the judge, justice of the peace or other magistrate finds that the facts recited in the complaint constitute probable cause for the search, that person may direct a warrant to any proper officer or to any other person by name for service. The warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or persons sought as particularly as possible, and may be returnable before any judge, justice of the peace or magistrate before whom it shall also direct to be brought the person or thing searched for if found, and the person in whose custody or possession such person or thing is found, to be dealt with according to law.").
31 *Sisson*, 903 A.2d at 296.
32 *Id.* (*citing* 11 *Del. C.* §2306; *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000)).
33 *Id.* (*citing Fink v. State*, 817 A.2d 781, 787 (Del. 2003)). *See also Gardner v. State*, 567 A.2d 404 (Del. 1989).

reasonable inferences from the factual allegations within the affidavit.[34]   As such, probable cause may exist under the totality of the circumstances where "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[35]

While the four-corners test "restricts the scope of a reviewing courts inquiry," the Court is still permitted to use common sense in its analysis.[36]   This allows the Court to avoid a hypertechnical approach when reviewing a search warrant.[37]   Moreover, the Court must give great deference to the judge or magistrate who initially finds probable cause to issue a search warrant.[38]   But, the Court must still determine whether the information provides the judge or magistrate with a substantial basis to find probable cause.[39]

Mr. Palmer and the State agree that the Court should apply a four-corners test to the Warrant.

## ANALYSIS

The Magistrate, in issuing the Warrants, properly determined that there was probable cause that Mr. Palmer committed the crime of Possession of a Firearm by a Person Prohibited. Moreover, the Warrants demonstrated the necessary probable cause that evidence to be seized relating to the crimes would be found in the places to be searched.

The relevant crime here is Possession of a Firearm by a Person Prohibited.   A person is guilty of Possession of a Firearm by a Person Prohibited when that person knowingly purchased, owned, possessed and/or controlled a firearm, and the person was prohibited from purchasing,

---

34 *Id.*
35 *Id.* (*citing Stones v. State,* 1996 WL 145775, at *2 (Del.1996) (Order) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
36 *See Holton*, 2011 WL 4638781, at *3.
37 *Id.*
38 *Sisson*, 903 A.2d at 296.
39 *Holton*, 2011 WL 4638781, at *3.

owning, possessing and/or controlling a firearm.[40]   A person convicted of a felony in Delaware or

elsewhere is a person prohibited from owning, possessing or controlling a firearm.[41]

This Court reviews the Magistrate's probable cause determination with great deference,

considering it as a whole in a practical, commonsense manner, and not on the basis of a

hypertechnical analysis of its separate allegations.[42]   This Court does so because "[a] grudging or

negative attitude by reviewing courts toward warrants is inconsistent with the Fourth

Amendment's strong preference for searches conducted pursuant to a warrant…."[43]   Therefore,

this Court's duty is to simply ensure that the Magistrate had a substantial basis for concluding that

probable cause existed.   Here, the Magistrate had a substantial basis for concluding that under the

totality of the circumstances there was a fair probability that a crime had been committed and that

Mr. Palmer committed the crime.

The Warrant contains numerous allegations that could support the crime of Possession of a

Firearm by a Person Prohibited.   The affiants stated that two informants – one a past, proven and

reliable confidential informant – supplied WPD with an "abundance" of information that Mr.

Palmer was operating a "stash house" for weapons at the Residence.   WPD surveilled the

Residence and observed a high frequency of activity coming from the Residence.   WPD noted

that multiple persons visited the Residence.   WPD saw that these same persons left the Residence

after short visits.   The training and experience of the Warrant's affiants led the affiants to

conclude that the activity at the Residence was consistent with the type of activity occurring at a

"stash house" where there is trafficking in illegal drugs and firearms.   WPD further corroborated

---

40  11 *Del. C.* § 1448(b).
41  11 Del. C. § 1448(a)(1).
42  *Sisson*, 903 A.2d at 296.
43  *Smith v. State*, 887 A.2d 470, 473 (Del. 2005)(quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).

8

the CI's information by confirming that Mr. Palmer's residence of record was the Residence and that he was on probation.

In addition, the Warrant's affiants provided information that gun shots were purportedly fired near the Residence on November 11, 2015. While the Court agrees that this last fact is barely relevant, the Court also finds that this is an additional fact that the Magistrate could have used when determining whether, under the totality of the circumstances, there was a fair probability that firearms were being stored at the Residence.

Mr. Palmer is a convicted felon and a felon on probation. That fact supports the conclusion that Mr. Palmer is a person prohibited – an extremely important and necessary fact for prosecuting a charge of Possession of a Firearm by a Person Prohibited. Other relevant facts were that Mr. Palmer had been previously convicted on firearms and firearms-related felonies.

Under the totality of the circumstances, taking all reasonable inferences to be drawn from the facts alleged in the Warrant, the information contained in the four-corners of the Warrant set forth probable cause that a crime had been committed and that Mr. Palmer had committed that crime. On this record, the Magistrate was presented with a substantial factual basis for making that conclusion. As such, this Court will not disturb the decision of the Magistrate.

This Court also finds that the Magistrate properly determined that there was a nexus between the crime purportedly committed and the evidence sought at the Residence. The Warrant provides that the basis of the Possession of a Firearm by a Person Prohibited arose out of the fact that Mr. Palmer was probably storing firearms at the Residence – the "stash house".

**CONCLUSION**

Based on the arguments above and applicable standards of review, this Court finds that Mr.

Palmer has not carried his burden with respect to the validity of the Warrant.   Therefore, the

Motion is hereby **DENIED**.

Dated: May 3, 2016
Wilmington, Delaware

/s/ *Eric M. Davis*

Eric M. Davis, Judge

cc:      Prothonotary
         John S. Taylor, Esq., Deputy Attorney General
         Patrick J. Collins, Esq.