# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,⁣ )
⁣ )
    v.⁣ )⁣ Case No. 1810005053A&B
⁣ )
SEAN P. JORDAN,⁣ )
⁣ )
    Defendant.⁣ )

Submitted: March 25, 2024
Decided: June 28, 2024

## **ORDER**

Upon consideration of Defendant Sean P. Jordan's Amended Motion for Postconviction Relief and the responses thereto, Superior Court Criminal Rule 61, statutory and decisional law, and the entire record in this case, **IT APPEARS THAT:**

1.    These are the facts as the Court finds them based on the record. On May 22, 2019, after a six-day jury trial, Jordan was convicted of Carrying Concealed Deadly Weapon, Drug Dealing, Aggravated Possession, two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), Possession of Drug Paraphernalia, Loitering for Drug Activity, Possession of a Firearm by a Person

Prohibited ("PFBPP"), and Possession or Control of Ammunition by a Person Prohibited ("PABPP").[1]

2.  Jordan's convictions stem from an October 9, 2018, anonymous 911 call concerning drug activity outside of 2206 Spruce Street in Wilmington, Delaware. The complaint indicated that two Black males were selling narcotics out of a silver Mercedes-Benz (the "Mercedes"). At approximately 7:14 a.m., Wilmington Police Department Officers Johnson and Dickerson were dispatched to investigate the complaint.

3.  When Officers arrived near the area, they parked their marked vehicle and approached the area on foot. While walking toward Spruce Street, they observed two individuals who matched the description provided by the 911 caller. Terrance Crosby was seated directly in front of the steps to 2204 Spruce Street (the "Residence") on a stool. The Residence was condemned as unfit for human habitation. Jordan, observed using his cellphone, was seated on a folding chair located on the sidewalk in front of the driver's side door of the Mercedes. Without waiting to verify any of the 911 caller's statements regarding drug activity, the Officers confronted the individuals.

---

[1] Jordan's PFBPP and PABPP charges were severed and separately tried before the same jury immediately following the jury's verdict in the "A" case.

4.    The Officers asked the gentlemen why they were sitting outside of the Residence.  Jordan responded that he was watching the house for its owner, Eleanor Flemming.  During this interaction, Officer Johnson noticed a white bag located under Crosby's stool.  Crosby intermittently pushed the bag further backwards, then placed his foot on top of the bag.  After asking Jordan and Crosby for identification, the Officers found Crosby had two outstanding warrants for his arrest.  Crosby, overhearing this information conveyed to the Officers via police radio, proceeded to grab the white bag and attempt to leave.  Officers quickly detained Crosby and secured the white bag.  Crosby, then, voluntarily professed that "everything in that bag is mine. It has nothing to do with [Jordan]."[2]  A search of the white bag uncovered candy, a box of condoms, and a loaded Smith & Wesson handgun (the "Firearm").

5.    In furtherance of the investigation, Officers contacted Flemming to search inside the Residence and Flemming consented.  In the Residence, Officers found a Christmas bag on the floor that contained wrapping paper, 273 glassine bags of heroin, 29 plastic vials of heroin, a cardboard box containing plastic sandwich bags, a razor blade, and a digital scale.  Flemming confirmed ownership of the Christmas bag and related wrapping materials, but not the heroin and drug paraphernalia. Flemming later clarified that although she asked Jordan to watch the Residence and allowed him to sit on the porch in inclement weather, she did not give him permission

---

[2] A154 at 61:13-14.

to go inside. Subsequently, the Officers obtained a warrant to search Jordan's Mercedes. Upon execution, a small amount of marijuana in a mason jar, a silver grinder, and $914.00 were found in the Mercedes.[3]

6. Crosby consented to the search of his vehicle which revealed a digital scale as well as five vials of heroin, empty heroin bags, and drug paraphernalia.

7. After arresting Jordan, Officers seized his two cellphones and later obtained a warrant to extract data from the cellphones. The warrant sought:

> any/all data stored by whatever means, and/or through the forensic examination of said cellular telephone, to include but not limited to registry entries, pictures, photographs, images, audio/visual recordings, multi-media messages, web browsing activities, electronic mail, telephone numbers, any similar information/data indicia of communication, and any other information/data pertinent to this investigation within the time frame of 01 May, 2018 to 09 October, 2018.[4]

8. The text messages extracted from one of Jordan's cellphones pursuant to the search warrant was used throughout his trial. In its opening statement, the State represented these messages contained "lots and lots of messages about drug dealing"[5] and that the evidence would show "the presence of a firearm consistent with drug

---

[3] The record later reflects that there was a mistake in the original testimony in that the scale was found in Crosby's truck, not Jordan's Mercedes. *See* Reply to Amend. Mot. for Postconviction Relief at 12; A260-61.

[4] A078-87. Jordan notes that there were two search warrants relating to his two cellphones, however, only evidence from the silver and black LG phone was admitted at trial. Therefore, the Court need not reach the issue related to the black Samsung cellphone.

[5] A110-11.

trafficking."[6]  Specifically, the State told the jury a drug expert will "talk about the [Firearm] and how firearms are relevant to the drug trade."[7]

9.     At trial, Detective Alexis Schupp of the Wilmington Police Department Drug and Organized Crime Unit testified as an expert witness that many of Jordan's text messages used language that was consistent with drug sales in Wilmington.  For example, the messages identified Jordan by his street name and indicated he possessed heroin for sale at 2204 Spruce Street.  After using the text messages to portray Jordan as a drug dealer, Detective Schupp explained how firearms play a role in the drug trade and that drug dealers use firearms to protect themselves from being robbed by other drug dealers or purchasers.  Finally, Detective Schupp explained that drug dealers purposely keep their drugs and weapons in different locations to thwart police investigations.

10.     In its closing argument, the State cited to Jordan's text messages, emphasizing the "cell phone dump shows you that [Jordan] is actively engaged in the sale of drugs from 2204 [] Spruce Street, and that one of the drugs he sells is heroin."[8]  Relying on Detective Schupp's testimony, the State argued that the cash, Firearm, drugs, and text messages established Jordan possessed the heroin with intent to

---

[6] A121.
[7] A120.
[8] A675.

5

deliver. As to the weapon related charges, the State reminded the jury of the need for drug dealers to possess a weapon.

11. On May 21, 2019, Jordan was convicted. After a presentence investigation, the Court sentenced Jordan to a total of 8 years at Level V unsuspended, followed by probation, and ordered Jordan to pay fines totaling $250.[9] On September 22, 2020, the Supreme Court affirmed Jordan's convictions on direct appeal.[10]

12. Jordan timely filed his first motion for postconviction relief *pro se* pursuant to Rule 61.[11] Subsequently, Jordan filed a Motion for Appointment of Counsel which was granted by this Court.[12] Postconviction Counsel was appointed to represent Jordan for purposes of seeking postconviction relief.[13] Postconviction Counsel filed an amended motion for postconviction relief (the "Motion") on January 10, 2023.[14] In his Motion, Jordan raised one claim – ineffective assistance of counsel. Jordan's trial counsel ("Trial Counsel") and the State responded to Jordan's argument,[15] and Jordan filed a reply in further support of his claim.[16] The Court held

---

[9] A801-08.
[10] *Jordan v. State*, 239 A.3d 389, 2020 WL 5641869 at *2 (Del. Sept. 22, 2020) (TABLE).
[11] D.I.A. 63; D.I.B. 35.
[12] D.I.A. 65; D.I.B. 36.
[13] D.I.A. 67; D.I.B. 38.
[14] D.I.A. 85; D.I.B. 56.
[15] D.I.A. 90 and 93; D.I.B. 61 and 64.
[16] D.I.A. 96; D.I.B. 67

oral argument and the State and Postconviction Counsel filed supplemental submissions addressing the issues developed at the hearing.

13. Before addressing the merits of any claim for postconviction relief, this Court must determine whether the motion is barred procedurally under Superior Court Criminal Rule 61.[17] A motion for postconviction relief may be barred for timeliness and repetition, among other things. A Rule 61 motion is untimely if it is filed more than one year after final judgment of conviction.[18] A defendant is also barred from filing successive motions for relief under the Rule.[19] Rule 61 further prohibits motions based on grounds for relief that were not asserted in the proceedings leading up to the judgment of conviction, unless the movant demonstrates "[c]ause for relief from the procedural default" and "[p]rejudice from violation of the movant's rights."[20] Finally, the Rule bars consideration for relief on grounds that previously were adjudicated in the case.[21]

14. Jordan's Motion was filed less than a year after his sentence became final and therefore it is timely. Because this is Jordan's first for postconviction relief it is not barred as repetitive. Lastly, the Motion alleges ineffective assistance of counsel,

---

[17] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[18] Super. Ct. Crim. R. 61(i)(1).
[19] *Id.* at 61(i)(2); *See id.* at 61(d)(2)(i)-(ii) (regarding the pleading requirements for successive motions).
[20] *Id*. at 61(i)(3)(A)-(B).
[21] *Id*. at 61(i)(4).

7

which could not have been raised at any earlier stage in the proceedings;[22] ineffective assistance claims may not be raised until postconviction proceedings.[23] Accordingly, the Motion will be decided on the merits.

15.    When a claim of ineffective assistance of counsel is raised, the two-prong test in *Strickland* governs the analysis.[24] To prevail, a defendant must demonstrate that: (1) trial counsel's representation fell below an objective standard of reasonableness; and (ii) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[25] There is a strong presumption that counsel's representation was reasonable.[26] Accordingly, a defendant must make specific allegations of actual prejudice and substantiate them; mere allegations or conclusory statements will not suffice.[27] Jordan meets this burden.

16.    Jordan contends Trial Counsel was ineffective because he failed to move to suppress evidence obtained from the search of his cellphone, when there was no nexus between the alleged crime committed and the device to be searched. The

---

[22] *Whittle v. State,* 138 A.3d 1149 (Del. 2016); *State v. Evan-Mayes,* 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).
[23] *See, e.g., Malloy v. State,* 16 A.3d 938, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011) (TABLE).
[24] *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *see also Neal v. State*, 80 A.3d 935, 941-42 (Del. 2013).
[25] *Id*.
[26] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[27] *Id.; see Monroe v. State,* 2015 WL 1407856, at *3 (Del. Mar. 25, 2015) (citing *Dawson v. State,* 673 A.2d 1186, 1196 (Del. 1996)).

absence of a motion to suppress, allowed the State to introduce text messages at trial, prejudicing Jordan. Therefore, Jordan also asserts that there is a reasonable probability that but for the alleged errors, the result of the proceeding would have been different. Jordan argues if the motion to suppress had been filed, it would have been granted, and the State would have been barred from using the text messages at trial. The illegally obtained evidence, Jordan contends, led to his wrongful conviction. Considering the facts of the instant case, the Court finds Trial Counsel's representation fell below an objective standard of reasonableness because Trial Counsel failed to file a motion to suppress, despite a strong likelihood of success.[28] Had the evidence been suppressed, there is a reasonable probability that trial would have been different. The Court's reasoning follows.

17. Trial Counsel should have filed a motion to suppress challenging probable cause and the particularity requirement. The United States Constitution's Fourth Amendment guarantees "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched,

---

[28] Delaware courts have held an attorney's failure to file a motion to suppress, when he had a reasonable belief that such motion would not be successful, does not fall below an objective standard of reasonableness. *State v. Day*, 2010 WL 2861852, at *3 (Del. Super. 2010). But unlike *Day,* this case does not involve counsel who (i) analyzed whether a motion to suppress would be successful, and (ii) concluded otherwise. *Id.* Further, there is no indication in the record that Trial Counsel found the filing of a motion to suppress based on the known facts "meritless" or "frivolous." *See State v. McGlotten,* 2011 WL 987534, at *11 (Del. Super. 2011).

and the persons or things to be seized."[29]  The Delaware Constitution provides substantially the same protections: "no warrant to search any place … or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation."[30]  Accordingly, the United States and the Delaware Constitutions provide protections to those whose property is subject to an investigatory police search and both require that a warrant be supported by probable cause and describe the places and things to be searched with particularity.[31]  Delaware law establishes a "four-corners" test for probable cause.[32]  This means the probable cause finding be supported only by those facts set forth within the warrant affidavit or application.[33]  An affidavit establishes the requisite probable cause "only where it contains a nexus between the items sought and the place to be searched."[34]  "In its most basic form, an affidavit must point not only to the evidence to be seized and the place to be searched, but also the reason *why* the affiant believes such evidence will be found in the place searched."[35]

---

[29] U.S. Const. amend. IV.
[30] Del. Const. Art. I § 6.
[31] *Terreros v. State*, 312 A.3d 651, 661 (Del. 2024) (citing *Fink v. State*, 817 A.2d 781, 786 (Del. 2003)).
[32] *Id*. at 662 (citing *Valentine v. State*, 207 A.3d 566, 570 (Del. 2019)).
[33] *Id.*
[34] *State v. Adams*, 13 A.3d 1162, 1173 (Del. Super 2008) (citing *Hooks v. State*, 416 A.2d 189, 203 (Del. 1980)).
[35] *Terreros*, 312 A.3d at 662 (citing 11 *Del. C.* § 2306).

18.     Here, the affidavit does not set forth sufficient facts to connect Jordan's device to the then-alleged drug activity.  The affidavit contains only two references related to Jordan's cellphone.  The first, in Paragraph 8, states that "immediately prior to his arrest, Jordan was observed using this mobile device."[36]  The second, in paragraph 10, provides that "persons involved in criminal acts will utilize Mobile Electronic Devices such as cellular telephones to further facilitate their criminal acts and/or communicate with co-conspirators."[37]  Neither statement even suggests that Jordan used his cellphone to *communicate*, much less used the cellphone to commit or facilitate the drug offense or as an instrumentality of the drug offense.  Also, in *Buckham v. State*, the Supreme Court of Delaware found that generalized suspicions such as "criminals often communicate through cellular phones" do not provide a substantial basis to support a probable cause finding.[38]  The affidavit does not contain any information that evidence of a crime would be found.  Therefore, these statements are unpersuasive and provide no basis to suspect that Jordan's cellphone was likely to contain evidence.  The affidavit lacks adequate facts that would establish the evidence of drug dealing would be found in Jordan's cellphone.  Accordingly, the cellphone

---

[36] A080.

[37] A081.

[38] 185 A.3d 1, 17 (Del. 2018).

evidence was seized before establishing probable cause which is unlawful under the protections of the United States and Delaware Constitutions.[39]

19. In addition, the warrant does not satisfy the particularity requirement. To meet the particularity requirement, the warrant must describe the things to be seized and the places to be searched with particularity such that "nothing is left to the discretion of the officer executing the warrant."[40] The Delaware Supreme Court opines that insufficiently particular warrants fall into two categories: general warrants and overbroad warrants.[41] General warrants allow police officers to conduct an indiscriminate search or exploratory rummaging and the fruits must be suppressed in their entirety.[42] Overbroad warrants explicitly allow law enforcement to search places

---

[39] The State's argument that it could have re-applied for a new warrant and that it would be upheld under the independent source doctrine is without merit. Assuming, without deciding, that the Court would permit a new warrant, the State still failed to articulate sufficient probable cause that would pass constitutional muster.

[40] *Terreros*, 312 A.3d at 662 (citing *Marron v. United States*, 275 U.S. 192, 196 (1927); *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)).

[41] *Id*. (citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.' The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'").

[42] *Id*. (citing *Wheeler v. State*, 135 A.3d 282, 292 (Del. 2016)).

and things when probable cause exists to search them and the portions of the search lacking probable cause can be redacted.[43]

20.    Here, although the warrant identifies a temporal period, it constitutes a general warrant because the evidence sought comprises almost all the cellphone's data, none of which is supported by probable cause.  Specifically, the police were granted authority to search "any/all data stored" of the phone for evidence "pertinent to the investigation."[44]  This is exploratory rummaging.  For this reason, too, the warrant is invalid, and the search for and review of the text messages violated Jordan's rights under United States and Delaware Constitutions.  Therefore, failing to file a motion to suppress constituted ineffective assistance of counsel.

21.    Without the evidence obtained from the illegal search, the outcome of Jordan's trial would have been different.  Under *Strickland's* second prong, Jordan must establish actual prejudice.  As previously determined, Trial Counsel's representation fell below an objective standard of reasonableness because he failed to file a motion to suppress despite the likelihood such motion would have succeeded.[45] If a motion to suppress had been filed, it would have been granted because no probable cause or particularity existed for the search warrant.

---

[43] *Id*. (citing *Wheeler*, 135 A.3d at 296).
[44] A078.
[45] *See supra* n.28.

22. The State argues the evidence, sans the text messages, was more than sufficient for the jury to find Jordan guilty. The evidence without the text messages included, a 911 call that two men were dealing drugs at a location near where Jordan was found, the Firearm, located under Crosby's stool which Crosby indicated belonged to him and tried to abscond with, presence of Jordan's DNA on the gun's trigger, Jordan's possession of two cellphones, heroin and drug paraphernalia in the Residence, testimony from Flemming that Jordan was not permitted inside the house, and cash and marijuana in Jordan's car. Absent the text messages, Jordan argues, the State would have been limited to Jordan's proximity to the contraband. The Court agrees. As to Jordan's DNA on the weapon, Trial Counsel created sufficient reasonable doubt as to whether Jordan actually touched or possessed the weapon during cross-examination of the State's forensic DNA analyst.

23. As detailed above, the State presented content and interpretation of the text messages throughout the trial. The cellphone evidence enabled the State to tie Jordan to the heroin *and* Firearm. At trial, Detective Schupp read and interpretated of 77 of the text messages. In conclusion, Detective Schupp testified that "[e]verything we went through on the text messages indicated drug sales"[46] and that "firearms are used in the drug trade in order to protect themselves from other drug dealers and/or purchasers that want to rob them of said drugs." Thus, the State's case

---

[46] A606 at 37:7-8.

intertwined the drug and firearm charges by presenting the Firearm as an instrumentality of Jordan's drug dealing, which was established through the text messages. Accordingly, there is a reasonable probability that had the cellphone evidence been suppressed, the trial would have been different for Jordan.

24. In summary, Jordan has met his burden of demonstrating (i) Trial Counsel's performance objectively was unreasonable by not pursuing a motion to suppress evidence obtained as a result of an illegal search; and (ii) Jordan was prejudiced as a result of that alleged deficiency.

25. Postconviction relief due to ineffectiveness of counsel must be granted in circumstances where the Court finds trial counsel's efforts fell below reasonable standard but for those errors, the outcome of the proceeding would have been different. Those challenging hurdles were met here. For the foregoing reasons, Jordan's Motion is **GRANTED**.

**IT IS SO ORDERED.**

_Patricia A. Winston_
_____
**Patricia A. Winston, Judge**

Original to Prothonotary (Criminal Division)
Cc:  John S. Taylor, Esquire, Department of Justice
      John S. Malik, Esquire
      Benjamin S. Gifford, Esquire
      Sean P. Jordan (SBI No. 282381)