IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ISAIAH PALMER, | § | |
| | § | No. 485, 2016 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | ID. Nos. 1511007472A&B (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: June 14, 2017
Decided: July 7, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## O R D E R

On this 7th day of July 2017, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1) Appellant, Isaiah Palmer, appeals from Superior Court verdicts of guilty on one count each of Aggravated Possession, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm by a Person Prohibited and Possession of Ammunition by a Person Prohibited. He makes two arguments on appeal. First, he contends that the trial court erred in denying his motion to suppress evidence because a search warrant for the search of his residence was not supported by probable cause. His second contention, as he frames it, is that a jury instruction

on joint possession created an impermissible risk that the jury's verdict was grounded in a legal theory unsupported by the record.

(2) In the second week of October 2015, Detective Matthew Rosaio and Detective Matthew Kucharski, both of the Wilmington Police Department, received information from a confidential informant ("CI-1") that 311 West 29th Street in Wilmington, Delaware was being used as a "stash house" for weapons. Based on the tip, the officers conducted surveillance of the residence in the last week of October. The officers "observed a high frequency of activity coming from the residence with multiple subjects responding and entering for short periods of time and then leaving."[1] To the officers, this observation was consistent with the allegation that the residence was a "stash house" for weapons and/or illegal drugs.

(3) In November of 2015, the officers received another tip from a "past proven and reliable" confidential informant ("CI-2").[2] CI-2 told the officers that a black male named Isaiah Palmer lived at 311 West 29th Street, and that he was on probation. This informant also stated that the residence was being used as a "stash house" for other individuals' weapons, and that firearms were being stored in an exterior shed.

---

[1] App. to Appellant's Opening Br. at 30.
[2] *Id.*

(4) The officers were familiar with Palmer from prior contact with him, and they knew that he was on probation and a person prohibited from possessing firearms or ammunition because of prior convictions. The officers were also aware that on November 11, 2015, police received a call from an anonymous caller that shots had been fired in the area of West 29th Street and North Jefferson Street. This intersection is approximately fifty feet from 311 West 29th Street. Through a check of the Delaware Criminal Justice Information System ("DELJIS") and a Delaware automated corrections system check, the officers confirmed that Palmer's residence of record was 311 West 29th Street.

(5) On November 12, 2015, the officers applied for a search warrant to search Palmer's residence and any and all curtilages, and detailed the above information in their affidavit of probable cause. A magistrate found that probable cause existed, and issued a warrant for police to search 311 West 29th Street for firearms.

(6) On November 12, 2015, at approximately 9:50 p.m., the Wilmington Police Department executed the search warrant. When the police arrived, there were four individuals, apparently relatives of Palmer, in the residence, but he was not there. Palmer arrived later during the execution of the search warrant. Palmer, along with the other family members, indicated that his bedroom was in the basement. A stairway led from the first floor to the basement. A separate stairway led from the basement to the outside of the residence. Inside the basement bedroom, police

3

observed a bed, men's clothing, and a dresser, along with a box sitting on a table several feet past the foot of the bed. On top of the box, officers observed a Taurus PT .45 caliber handgun with eight rounds of ammunition. Police discovered additional ammunition in the shed in the backyard. A bag labeled "I-95 Enter" was found in a cubbyhole near the basement steps, and within it were nine bundles of heroin containing .117 grams. Additional bags of heroin were found outside of the residence in recycling bins. Those bags were stamped with the phrase "Nike" and weighed 20.91 grams.

(7) Palmer was indicted on counts of Drug Dealing Tier 4, Aggravated Possession Tier 5, Possession of Ammunition by a Person Prohibited ("PABPP"), Possession of a Firearm by a Person Prohibited ("PFBPP"), and two counts of Possession of a Firearm During Commission of a Felony ("PFDCF").

(8) Before trial, Palmer filed a motion to suppress the fruits of the search of his residence. The motion was denied.

(9) The PFBPP and PABPP charges were severed from the others. The two drug charges and the two PFDCF charges were presented to a jury. The jury acquitted Palmer of the Drug Dealing charge and the PFDCF charge that went with the Drug Dealing count, but found him guilty of the Aggravated Possession charge and the PFDCF charge that went with it. A judge then found Palmer guilty of the PFBPP and PABPP charges at a bench trial.

4

(10) Palmer's first claim is that the trial court erred in denying his motion to suppress evidence found during the search of his residence because there was insufficient probable cause to support the issuance of the search warrant. We review a trial court's denial of a motion to suppress for an abuse of discretion.[3] "The trial court's formulation and application of legal concepts are reviewed *de novo*, but the trial court's factual findings will be upheld so long as they are not clearly erroneous."[4]

(11) "A search warrant may be issued only upon a showing of probable cause."[5] "Probable cause requires that, 'given all the circumstances . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[6] "An affidavit in support of a search warrant must, within the four corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place."[7] "In reaching a decision, a magistrate's finding should be based on the totality of the circumstances."[8] "[A]fter-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of *de novo* review. A

---

[3] *Rivera v. State*, 7 A.3d 961, 966 (Del. 2010).
[4] *Id.*
[5] *Fink v. State*, 817 A.2d 781, 786 (Del. 2003).
[6] *Stones v. State*, 1996 WL 145775, at *2 (Del. Feb. 23, 1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).
[7] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).
[8] *McKinney v. State*, 107 A.3d 1045, 1047 (Del. 2014).

magistrate's determination of probable cause should be paid great deference by reviewing courts."[9]

(12) Palmer contends that the affidavit in the officers' application for a search warrant did not contain sufficient probable cause to search his residence, primarily because the officers did not adequately corroborate the information provided by the confidential informants. Palmer argues that the affidavit did not contain any information about the informants, aside from noting that CI-2 was "past proven and reliable," and did not describe how the informants conveyed their information to the police. He further argues that the affidavit did not explain how the informants came to have personal knowledge of the firearms they alleged were located in Palmer's residence and that the officers' observations failed to confirm that weapons were being stored in the dwelling. He further argues that the anonymous call about a weapon being discharged near the dwelling has no probative value.

(13) We agree that the anonymous phone call about a weapon being fired near Palmer's residence has little or no relevance. However, based on the totality of the circumstances, we find that there were adequate facts for the magistrate to form a reasonable belief that Palmer's residence was being used a stash house. The police had consistent tips from two informants, including one who had previously proven him or herself to be reliable and who gave accurate information regarding Palmer's

---

[9] *Smith v. State*, 887 A.2d 470, 473 (Del. 2005) (quoting *Gates*, 462 U.S. at 236).

6

identity and probationary status. The officers conducted surveillance of the residence during which they observed conduct that, based upon their experience, appeared to confirm the tips received from the informants. Additionally, the officers were familiar with Palmer and his history of criminal offenses involving weapons. Given the totality of the circumstances, the trial court was correct to deny Palmer's motion to dismiss.

(14) Palmer's second contention is that the trial court erred when it instructed the jury on joint possession with regard to the Aggravated Possession charge because the instruction was not supported by evidence in the record. This Court reviews a trial judge's decision to give a jury instruction over the defendant's objection *de novo*.[10] Palmer argues, "no evidence was introduced to suggest that Palmer's connection with drug-related activities was a joint endeavor involving the other residents of 311 West 29th Street. There was also no evidence that [he] was acting in concert with any other individuals who did not live in the residence."[11]

(15) The following instruction was given regarding joint possession at trial:

> Possession may be sole or joint. If one person has actual or constructive possession over a thing, possession is sole. If two or more persons share actual or constructive possession over a thing, possession is joint. Possession is proven if you find beyond a reasonable doubt that the

---

[10] *Robertson v. State*, 41 A.3d 406, 408 (Del. 2012).
[11] Appellant's Opening Br. at 18.

7

defendant had actual or constructive possession either alone or jointly with others.[12]

(16) The trial judge stated that she gave the instruction because there were other people in the residence when the police arrived to do the search and there was evidence that other people had access to the residence. For the reasons given by the trial judge, the jury instruction on joint possession was supported by the evidence at trial. The State's burden was to prove that Palmer possessed the drugs, but not to show that he had exclusive possession. Since there was evidence that other persons, in addition to Palmer, had access to the place where the drugs were found, the instruction was properly given. The instruction still required the jury to find beyond a reasonable doubt that Palmer possessed the drugs in order to find him guilty.

(17) In his reply brief, Palmer contends that the Court failed to give a curative instruction in response to a note from the jury. During deliberation, the jury asked if the visitors that the officers observed entering the residence during their surveillance of the property entered through the basement or front door. The trial court responded by stating, "The Court is not permitted to comment on the evidence. You must answer this question yourselves by consulting with each other and relying on your own recollections of the evidence that was produced, including the testimony."[13] Defendant claims that the trial court should have given a curative

---

[12] App. to Appellant's Opening Br. at 128.
[13] *Id.* at 132.

8

instruction because "[t]he jury's question contained an implicit assumption that Mr. Palmer could be convicted of joint constructive possession if those 15 to 20 visitors had entered the residence through the basement. This assumption is not supported by the record."[14] Palmer did not request such an instruction at trial nor did he raise this argument in his opening brief on appeal. Therefore, this claim is waived under Supreme Court Rules 8[15] and 14.[16]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

Justice

---

[14] Appellant's Reply Br. at 5.

[15] "Only questions fairly presented to the trial court may be presented for review." Supr. Ct. R. 8.

[16] "The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal." Supr. Ct. R. 14(b)(vi)(A)(3).

9